Appeal from a decision of the Unemployment Insurance Appeal Board, filed January 24, 2012, which ruled that The College Network Inc. is liable for unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
The College Network Inc. (hereinafter TCN) is a corporation that sells educational materials to individuals for personal study from home to enable them to obtain college credits through testing. TCN retained representatives like claimant — called program advisors — for the purpose of promoting and selling such materials to prospective customers. After claimant ceased working for TCN, he filed a claim for unemployment insurance benefits. Based upon information claimant provided, the Department of Labor determined that he was an employee of TCN and it assessed TCN for unemployment insurance contributions based on remuneration paid to claimant and others similarly situated. TCN contested the determination and, following a hearing, an Administrative Law Judge sustained it. The Unemployment Insurance Appeal Board upheld the decision and TCN now appeals.
*1059 It is well settled that “the existence of an employment relationship is a factual issue for the Board to decide and its determination will be upheld if supported by substantial evidence” (Matter of Automotive Serv. Sys., Inc. [Commissioner of Labor], 56 AD3d 854, 855 [2008]; see Matter of Interlandi [Cremosa Foods Co., LLC — Commissioner of Labor], 70 AD3d 1150, 1150 [2010]). “The predominant consideration in making this inquiry is evidence of the alleged employer’s control over the results produced or the means used to achieve those results, with the latter being more important” (Matter of Rodriguez [2020 Video Voice Data, Ltd. — Commissioner of Labor], 58 AD3d 929, 929-930 [2009] [citations omitted]; see Matter of MacFarlane [Aid Assn, for Lutherans Corp. — Commissioner of Labor], 35 AD3d 1076, 1077 [2006]). Here, there is ample evidence that TCN exercised control over many aspects of the program advisors’ work.
Notably, TCN established the program advisors’ sales territory and provided them with sales leads as well as product knowledge training. Although the program advisors could pursue these leads or develop their own, they were paid commissions based upon percentages set by TCN depending on the manner in which the sale was generated. The program advisors were required to report to TCN the results of company-generated leads and were only allowed to use advertisements and promotional materials approved by TCN. TCN provided program advisors with company email addresses and business cards, and reimbursed them for the expenses of attending some training. Notably, at times, regional sales managers accompanied the program advisors on sales calls to ensure they were providing customers with accurate information. In addition, TCN maintained a corporate calendar by which it would schedule appointments for the program advisors depending upon their availability. Significantly, the program advisors were expected to contact nine customers within a 90-day period, and TCN retained the right to terminate them if they were underperforming. TCN also prohibited the program advisors from working for competitors for a two-year period. In view of the foregoing, substantial evidence supports the Board’s finding of an employment relationship between TCN and the program advisors notwithstanding the existence of evidence, including the independent contractor agreement (see Matter of O’Connor [2020 Powervision, Ltd. — Commissioner of Labor], 67 AD3d 1302, 1303 [2009]; Matter of Noel [Life Alert Emergency Response, Inc. — Commissioner of Labor], 38 AD3d 1082, 1084 [2007]), that would support a contrary result (see Matter of Greenspan [Adco Paper & Packaging Co. — Commissioner of *1060 Labor], 31 AD3d 1092, 1093 [2006]). Accordingly, we decline to disturb its decision assessing TCN for unemployment insurance contributions based thereon.
Peters, EJ., Rose, Stein and McCarthy, JJ., concur. Ordered that the decision is affirmed, without costs.